IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ROSANGELA RIVERA-ORTIZ, on her own behalf and in representation of her daughter VALENTINA ORTIZ-TORRES and her son MELVIN FRANCISCO MATIAS-RIVERA<br><br>Plaintiffs<br><br>vs.<br><br>DR. WILLIAM ORTIZ-VALE, his wife JANE DOE and the conjugal partnership formed between them; ASHFORD PRESBYTERIAN COMMUNITY HOSPITAL; PEDIATRIX MEDICAL GROUP OF PUERTO RICO, P.S.C.; DR. AMAURY VELEZ, his wife MARY MOE and the conjugal partnership formed between them; DR. AWILDA RIVERA, her husband JOHN DOE and the conjugal partnership formed between them; DR. ROSA BONILLA, her husband MIKE MOE and the conjugal partnership formed between them; DR. SYLVETTE SOTO, her husband PETER POE and the conjugal partnership formed between them; DR. HECTOR DIAZ, his wife PATTY POE and the conjugal partnership formed between them; SIMED; COMPANIES A-Z; RICHARD ROE; and ROSE ROE.<br><br>Defendants | CIVIL NO.<br><br>PLAINTIFFS REQUEST JURY TRIAL |

## COMPLAINT

TO THE HONORABLE COURT:

COME NOW plaintiffs, through the undersigned legal representation, and very respectfully STATE, REQUEST AND PRAY:

### JURISDICTIONAL ALLEGATIONS

1. This Honorable Court is vested with jurisdiction over the parties and the subject matter of this litigation under and pursuant to the diversity of citizenship statute

(Section 1332 c) of Title 28 of the United States Code, 28 U.S.C. §1332), inasmuch as there is complete diversity of citizenship between the Plaintiffs, as residents of the State of Texas and the defendants, residents of the Commonwealth of Puerto Rico, and the amount in controversy, exclusive of costs and interest, exceeds the amount of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00). As more specifically alleged below, all Defendants are domiciled and permanent citizens of Puerto Rico within the meaning of 28 U.S.C. §1332 and all Plaintiffs are domiciled and permanent citizens of a state of the United States of America other than Puerto Rico.

2. Venue is proper in this Court pursuant to Section 1391 of Title 28 of the United States Code, 28 U.S.C. §1391, because the claims asserted arose in this judicial district.

3. Plaintiffs request a jury trial.

4. All codefendants are jointly and severally responsible to plaintiffs for the damages suffered by them.

## THE PARTIES

5. Co-plaintiff ROSANGELA RIVERA-ORTIZ (hereinafter "ROSANGELA") is 33 years old, married, employee and a legal resident of Texas, with residential address at 9400 Wade Blvd., Apt. 1525, Frisco, Texas 75035. Co-plaintiff VALENTINA ORTIZ-TORRES ("VALENTINA") is Rosangela's daughter, who is 3 years old and lives with her mother in the same address. Co-plaintiff MELVIN FRANCISCO MATIAS-RIVERA is Rosangela's 18 year old son that lives with both Rosangela and Valentina.

6. Co-defendant DR. WILLIAM RUIZ-VALE (hereinafter "DR. RUIZ") is a physician duly authorized in the Commonwealth of Puerto Rico with specialty in obstetrics and gynecology who provided medical services to Rosangela and Valentina.

2

He is married to JANE DOE, with whom he has a conjugal partnership. At all times relevant to the facts of this case Dr. Ruiz had medical privileges at codefendant Presbyterian Community Hospital in San Juan, Puerto Rico and had a private office located in Dorado, Puerto Rico under the name of Dorado OB/GYN.

7.  Codefendant ASHFORD PRESBITERIAN COMMUNITY HOSPITAL ("ASHFORD") is a legal entity or a commercial name of a private healthcare institution in San Juan, Puerto Rico.

8.  Codefendant PEDIATRIX MEDICAL GROUP OF PUERTO RICO, P.S.C. is a corporation licensed in the Commonwealth of Puerto Rico that was granted by ASHFORD an exclusive contract to provide the neonatology services in the hospital. Codefendants DR. AMAURY VELEZ, his wife MARY MOE and the conjugal partnership formed between them; DR. AWILDA RIVERA, her husband JOHN DOE and the conjugal partnership formed between them; DR. ROSA BONILLA, her husband MIKE MOE and the conjugal partnership formed between them; DR. SYLVETTE SOTO, her husband PETER POE and the conjugal partnership formed between them; DR. HECTOR DIAZ, his wife PATTY POE and the conjugal partnership formed between them are all pediatrician and/or neonatologists that were employed by PEDIATRIX and afforded medical privileges by Ashford and that provided medical care to Valentina in the neonatal intensive care unit.

9.  Codefendant SINDICATO DE ASEGURADORES DE IMPERICIA MEDICA (hereinafter "SIMED") is an insurance company authorized to do business in Puerto Rico, which at the time of the facts alleged in this complaint had in full force and effect an insurance policy covering the damages alleged in this complaint and the responsibility of

codefendants. SIMED is deemed to reside in Puerto Rico within the meaning of 28 U.S.C. §1332.

10. Companies A-Z are legal entities that at the times relevant to these facts owned, operated, managed, and/or administered, in whole or in part, and were solely or partially responsible for the administrative and medical issues of any of the codefendant's medical entities to provide all or part of the medical and/or administrative services. In the alternative, they are other legal entities that caused or contributed to causing the damages to plaintiffs. Also, and in the alternative, they are insurance companies which at the time the facts of this case took place had in full force and effect insurance policies in favor of codefendants.

11. Codefendants RICHARD ROE and ROSE ROE are other physicians that are neonatologists or other whose were employed by or that had been granted privileges by any of codefendants, who committed negligent acts or omissions that caused and/or contributed to causing plaintiffs damages. In the alternative, they are third parties and/or defendants of unknown identities who caused and/or contributed to causing plaintiffs' damages.

12. All of the named defendants are jointly and severally responsible to plaintiffs for the damages caused to them. All defendants fictitiously named herein, will be correctly named once their identities are determined.

## THE RELEVANT FACTS

13. On March 11, 2010 Rosangela was 9 weeks pregnant with Valentina. She went to Dorado OB/GYN where she trusted her prenatal care to Dr. Ruiz. Rosangela was married and living at the time in Dorado, Puerto Rico. She had 2 years of

university studies in communications and had a full time job with "Empresa Comunitaria" providing communication services to the low income population.

14.     Rosangela is also the mother of co-plaintiff Melvin Francisco Matías-Rivera, who was born in 1994 via cesarean section with no complications.  Melvin is completely normal and is currently undergoing university studies at Collins College, Texas.

15.     On June 15, 2010 (19 weeks gestation) Rosangela's membrane ruptures spontaneously.  Bed rest was advised.  At that time an ultrasound examination reflected that Valentina's brain ventricles were normal in size and that there was sufficient amniotic fluid.  She received Celestone on August 3 and 4, 2010.  Celestone is a medication meant to aid in the development of the baby's lungs, in the case the baby is born prematurely.

16.     Rosangela was frequently monitored for the amount of amniotic fluid or "amniotic fluid index" ("AFI").  She had low AFI in various occasions, and on August 5, 2010 she was hospitalized at Ashford for decreased fetal movement.

17.     While hospitalized at Ashford there was evidence of a thin watery discharge.  She was diagnosed with a "high leak". An ultrasound of August 5 showed that Valentina's brain ventricles were normal. Rosangela got better and was discharged on August 7, 2010.

18.     Another sonogram, of August 21, 2010 noted that Valentina's lateral and third brain ventricles were normal and on August 24, 2010 there was good fetal movement and a reactive non stress test, meaning that Valentina was normal.

19.     However, on August 25, 2010, at 33 weeks of gestation the AFI was only 1.4 (down from 7.53), indicating she had extremely low amniotic fluid.  This dangerous

condition is known as "severe oligohydramnios". Because of the lack of amniotic fluid, which cushions the baby inside the mother's womb, there was the real risk that Valentina could become compressed in her mother's womb and suffer severe damage. This is why delivery of Valentina was mandatory on August 25, 2010. Although the plan on Ashford's medical record was to "consider delivery", delivery was not performed.

20. On August 26, 2010 decreased fetal pain was found, meaning that Valentina was not moving normally inside the womb and Rosangela complained of pelvic pain. At the same time a non-stress test performed reflected recurrent variable decelerations due to cord compression. This means that due to the low amniotic fluid, Valentina's umbilical cord was becoming compressed inside Rosangela's womb and as a result the Valentina's heart rate was going down.

21. Periods of severe cord compression took place which caused prolonged partial episodes of fetal asphyxia causing "watershed" infarcts inside Valentina's brain, especially in the periventricular area of her brain because she was premature. This means that the cord compressions left Valentina without an adequate supply of blood/oxygen or with none at all at points, causing her severe brain damage.

22. Valentina suffered bilateral hemorrhagic infarcts and a large left germinal matrix bleed, which led to grade III and IV intraventricular hemorrhages. This means that Valentina's brain had blood hemorrhages as a result of the lack of blood/oxygen, causing her total and irreversible brain damage.

## FIRST CAUSE OF ACTION: MEDICAL NEGLIGENCE

23. All codefendants provided substandard medical treatment to Rosangela and Valentina that caused and/or contributed to causing the damages to plaintiffs. The medical treatment that codefendants provided to them fell well below the standards of

medical attention that in view of the modern means of communication and, according to the knowledge of science and the prevailing practice of medicine satisfies the requirements generally recognized by the medical profession.

24. Specifically, Dr. Ruiz and the physicians at Ashford were negligent in failing to deliver Valentina on August 25, 2010 as soon as it was known that the AFI had dropped to 1.4. If Valentina would have been delivered as soon as the low AFI results were know, more likely than not Valentina be a normal child today. Dr. Ruiz was also negligent by failing to properly and constantly monitor Rosangela, by failing to visit Rosangela at the hospital, by failing to come to the hospital as soon as called and by failing to answer the calls that were placed by the other doctors, the hospital staff and by Rosangela. As a fact, Dr. Ruiz did not show to the hospital at least 2 days before August 26, the days he performed the cesarean section on Rosangela.

## SECOND CAUSE OF ACTION: LACK OF INFORMED CONSENT

25. All codefendant are jointly and severally responsible for failing to obtain Rosangela's informed consent and for not explaining to her the possible risks and consequences of not delivering the baby on August 25, 2010 as soon as the AFI went down to 1.4. Also, codefendant's failed to obtain her consent to keep Valentina in the neonatal intensive care unit for days regardless of the fact that she needed a neurosurgeon and/or a transfer to another institution that had one. A soon as Rosangela learned that Valentina's condition required the consultation of a neurosurgeon and a transfer to another institution, she immediately made the arrangements herself and found available space at the Pediatric Hospital.

## THIRD CAUSE OF ACTION: HOSPITAL NEGLIGENCE

26. Codefendant Ashford is jointly and severally responsible for all the damages caused to plaintiffs. Ashford's negligence is four-pronged. First, Ashford is directly and vicariously responsible for all the negligent acts of its personnel. Regardless of the fact that the nurses and other physicians of the hospital knew that Rosangela's AFI had dangerously dropped to 1.4 and that her baby was not moving, they failed to immediately contact Dr. Ruiz and have him come to the hospital. If in fact Dr. Ruiz was called by the hospital, his failure to come should have mandatorily triggered the hospital's duty under it rules, regulation and by laws to immediately inform the hospital's Medical Director and/or the Director of the OB/GYN department so that another OB/GYN would have promptly taken care of the patients and delivered Valentina.

27. Second, Ashford is directly responsible for the negligent acts of Dr. Ruiz, to whom medical privileges for the practice of obstetrics and gynecology were negligently provided. Obviously, Dr. Ruiz was not qualified to take care of a patient like Rosangela.

28. Third, Ashford is directly responsible for the negligent acts of the neonatologists and other doctors that it provided for the care of Valentina. All the neonatologists and doctors were supplied by the hospital and had not been previously chosen by Rosangela. None of the neonatologists recognized Valentina's critical condition after birth and failed to diagnose her obvious and severe hydrocephalus that permitted Valentina's head circumference to grow day by day.

29. Finally, Ashford is liable for not having a neurosurgeon on duty and for failing to promptly transfer Valentina to a hospital that had a pediatric neurosurgeon.

This delay by the hospital caused Valentina's brain to enlarge and to become damaged with extreme intracranial pressure because liquid was accumulating due to her severed hydrocephalus.

## FOURTH CAUSE OF ACTION: NEONATOLOGIST'S NEGLIGENCE

30.    Ashford's neonatology service is directly responsible for the damages caused to plaintiffs. Codefendant PEDIATRIX, DR. AMAURY VELEZ, DR. AWILDA RIVERA, DR. ROSA BONILLA, DR. SYLVETTE SOTO, and DR. HECTOR DIAZ, were negligent in that they failed to recognize signs of hydrocephalus, which means excess liquid in the brain that cannot flow out. This finding warranted the consultation of the neurology and/or neurosurgery service by the neonatology service, but that consultation never took place. In the alternative, these neonatologists recognized Valentina had hydrocephalous, which was evident from the radiologic tests that were performed and from the own clinical observation of the neonatologist, but failed to immediately refer her to a pediatric neurologist or neurosurgeon to have the excess fluid removed from her brain. The neonatologist delayed a neurosurgery evaluation for seventeen (17) days until Valentina was transferred to University Hospital, which led to causing severe brain damage. They did not notice that the baby's damages had taken place in utero and that she was in a critical condition, and they did not do anything even upon noticing that Valentina's head circumference was getting larger due to the intracranial pressure of the liquid that could not flow out of the brain.

## DAMAGES

31.    The proximate and sole cause of plaintiffs' damages was the medical and individual negligence of defendants. As a direct consequence of defendants' substandard medical treatment provided to plaintiffs, Valentina is totally and

9

permanently disabled. Valentina cannot complete any activities on her own. She cannot walk, talk, crawl, stand up, move her head or her body, see, hear partially, taste or perform any other basic activity of daily human living. Valentina requires 24/7 care and attention. She is fed via a gastric tube and her throat secretions have to be constantly suctioned. As a result of her brain damage, Valentina suffers no less than 17 convulsions per day, even though she in under anticonvulsive medication. Valentina suffers severe developmental and intellectual delay and deficiencies. She has no attention span due to her blindness, but has quick auditory reactions, especially to music. She does not play and with a chronological age of 3 years has a developmental age of 3 months. She has renal and hematological problems and constantly need to be taken to many specialists such as pediatrician, pediatric hematologist, pediatric nephrologist, pediatric pulmonologist, and pediatric ophthalmologist. Valentina requires several weekly sessions of physical, occupational and speech therapy. She also required brain surgery for the placement of a VP Shunt, so that the liquid trapped in her brain due to her severe hydrocephalus caused by the anoxic episode could be drained out. She cannot drink any water as she will choke and aspirate.

32.    Valentina's damages were caused solely by codefendants negligence and any genetic origin of her conditions has been ruled out by all the tests performed by genetic specialists in Texas. The fact that Valentina's brain was normal on August 21, 2010 as per the ultrasound, but that later it showed cerebral infarcts and bilateral hemorrhages on August 26, 2010 after the AFI went down to 1.4 and she started having repetitive variable decelerations is direct evidence that her damages were caused between August 26, 2010 and September 14, 2010.

33. Valentina needs constant medical attention, treatment and equipment. It is estimated that the medical care, treatment and equipment being received by Valentina in Texas is worth no less than twenty five thousand dollars ($25,000.00) per month. This is expected to continue and to increase with the onset of new medical conditions and with the progress of existing conditions. With an average life expectancy, these damages are expected to increase to no less than fifteen million dollars ($15,000,000.00).

34. Valentina is suffering grave emotional damages as she can discern that she is trapped inside an incapable body. With the passing of time, this will cause her depression, suicidal thoughts, and despair. These emotional damages are valued in a sum of no less than five million dollars ($5,000,000.00).

35. Rosangela has devoted herself to the round-the-clock attention of Valentina. She cannot work full time and is expected that she will lose earning of no less than $750,000.00 throughout her life. She also has lost her normal life and due to codefendant's negligence, is caught inside a never-ending cycle of physician offices, medical tests and medications for Valentina. Undoubtedly, she is also suffering grave emotional damages that are worth no less than five million dollars ($5,000,000.00).

36. Melvin Francisco will also continue to suffer greatly due to her sister's damages. His emotional damages are worth no less than $3,000,000.00.

WHEREFORE, it is respectfully requested from this Honorable Court to grant all allegations in this complaint for plaintiffs and against defendants with the imposition of costs, treble damages, interest and a reasonable amount of attorney's fees.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 6th day of September, 2013.

*(signature)*

PEDRO F. SOLER-MUÑIZ
USDC/PR NO. 212,909
221 PONCE DE LEÓN AVE.
SUITE 601
SAN JUAN, PR  00917
TEL. 787-774-6522; FAX.787-706-8680
psoler@solerlaw.com